IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

ANDRE NORWOOD TAYLOR,⁣          )
⁣                              )
⁣          Petitioner,          )
⁣                              )
⁣     v.                        )          CV 119-168
⁣                              )          (Formerly CR 116-054)
UNITED STATES OF AMERICA,       )
⁣                              )
⁣          Respondent.          )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at FCI Edgefield in Edgefield, South Carolina, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

A.      **Indictment**

On July 6, 2016, the grand jury in the Southern District of Georgia charged Petitioner in a three-count indictment with (1) possession of marijuana with intent to distribute; (2) possession of a firearm in furtherance of a drug trafficking crime; and (3) possession of a firearm by a convicted felon. United States v. Taylor, CR 116-034, doc. no. 1 (S.D. Ga. June 9, 2017) (hereinafter "CR 116-034"). On November 8, 2016, Petitioner pled not guilty to all counts and was released on bond. CR 116-034, doc. no. 9. As originally charged, Petitioner

faced a statutory sentence of not more than five years of imprisonment on Count One, not

less than five years nor more than life imprisonment on Count Two, and not more than ten

years of imprisonment on Count Three.  Id., doc. no. 2.  Petitioner retained attorney Peter D.

Johnson to represent him.  Id., doc. no. 7.

### B.      Guilty Plea

On February 17, 2017, Petitioner appeared with counsel and pled guilty to one count

of felon in possession of firearms.  Id., doc. no. 21-23.  The written plea agreement identified

the elements of the offense as:  "(1) that the Defendant knowingly possessed a firearm in or

affecting interstate commerce; and (2) before possessing the firearm, the Defendant had been

convicted of a felony – a crime punishable by imprisonment for more than one year."  Id.,

doc. no. 23, ("Plea Agreement"), p. 1.  In exchange for the guilty plea, the government

agreed to dismiss the remaining counts of the indictment and not object to a recommendation

from the probation office for a two-point acceptance of responsibility reduction.  Id. at 3-4.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea:

> [O]n or about May 4, 2016, in Richmond County, within the Southern
> District of Georgia, the Defendant, **ANDRE NORWOOD TAYLOR,** who
> before that time had been convicted of one or more felonies, crimes punishable
> by imprisonment for a term exceeding one year, those are,
>
> > *Possession of Cocaine*, convicted on May 3, 2006, in the Superior
> > Court of Richmond County, Georgia, Case No. 2006RCCR108; and,
> >
> > *Possession of Cocaine*, convicted on December 7, 2007, in the Superior
> > Court of Richmond County, Georgia, Case No. 2007RCCR1372.
>
> did knowingly possess, in and affecting commerce, a firearm and ammunition,
> that is, a Ruger, Model LCP, .380 caliber pistol, serial number 377-09007,
> which previously had been shipped or transported in interstate or foreign
> commerce; all done in violation of Title 18, United States Code, Sections
> 922(g)(1) and 924(a)(2).

Id. at 2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 10.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum; (2) sentenced him above the advisory Sentencing Guidelines range; or (3) the government appealed the sentence. Id. at 6-7.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. at 7.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id.  By signing the Plea Agreement, Petitioner additionally attested Mr. Johnson had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 8.

Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 32 ("Rule 11 Tr."), pp. 7, 9.  Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on the felon in possession charge to which the guilty plea applied. Id. at 9, 17.  Petitioner confirmed he had as much time as he needed to go over the charges with Mr. Johnson. Id. at 9-10.  Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Johnson and that he had read and reviewed the Plea Agreement with counsel before signing it. Id. at 10, 13.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 11-12.  Among the rights

3

explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 13-14. Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 17.

Judge Hall reviewed the statutory penalty of a sentence up to ten years in prison. Id. at 14. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $250,000 fine and up to three years of supervised release after completion of the term of imprisonment. Id. Judge Hall also explained that upon Petitioner's conviction, he would lose the right to vote, hold public office, serve on a jury, and own or possess firearms or ammunition. Id. at 15. Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report ("PSI"), and Petitioner's sentence would be based on the information in the PSI. Id. Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range. Id. at 16-17. Petitioner stated he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence. Id. at 17.

Next, Judge Hall heard the factual basis for Petitioner's guilty plea from Ronald Rhodes, Special Agent with the Bureau of Alcohol, Tobacco, and Firearms. Id. at 18. SA Rhodes testified that, on May 4, 2016, Richmond County narcotic investigators conducted surveillance of a residence located at 1302 Wallace Street because of complaints of drug activity. Id. After pulling over several vehicles who left the residence, two vehicles were in

possession of marijuana.  Id. at 18-19.  As a result, narcotics investigators obtained a search

warrant for 1302 Wallace Street.  Id. at 19.  Petitioner and two other individuals were present

at the time of the search.  Id.  Investigators located 520 grams of marijuana and a Ruger,

Model LCP .380 caliber, pistol in the residence.  Petitioner was mirandized and confessed to

possession of the firearms and narcotics.  Id.

During his investigation, SA Rhodes determined Petitioner had two prior felony

convictions out of the Superior Court of Richmond County for possession of cocaine.  Id.

SA Rhodes also determined the firearm in Petitioner's possession at the time of his arrest

was manufactured outside of Georgia and reported stolen to the Richmond County Sheriff's

Office on December 18, 2012.  Id.  Petitioner stated to Judge Hall the information provided

by SA Rhodes and contained in Count Three of the indictment was true and he was guilty of,

and wanted to plead guilty to, the felon in possession charge.  Id. at 20.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this hearing, this
> court finds that Mr. Taylor, the defendant, is competent. He fully understands
> the charge against him. There is an independent factual basis for his plea of
> guilty containing each of the essential elements of the offense. He knows the
> statutory punishment that could be imposed on the charge and he knows his
> jury rights which he has knowingly and voluntarily waived. I further find that
> Mr. Taylor's decision to plead guilty today was voluntary, knowing, and not as
> a result of any force, pressure, threats or promises other than the promises
> made by the Government in the Plea Agreement. Therefore, the plea is
> accepted, and Mr. Taylor is now adjudged guilty of count three of the
> Indictment based upon that plea.

Id. at 21.  Judge Hall allowed Petitioner to remain on bond pending sentencing.  Id. at

22.

### C.    Sentencing

The United States Probation Office then prepared a PSI which set Petitioner's Total

Offense Level at twenty-three, Criminal History Category at V, and guidelines imprisonment range at 84 to 105 months.  PSI ¶¶ 24, 31, 59.  The criminal history section listed the two prior felonies listed in the indictment and Plea Agreement.  PSI ¶¶ 27, 29.  The base offense level of twenty-three was increased by two and four points, respectively, because the firearm Petitioner possessed was stolen and Petitioner possessed the firearm while in possession of a felony quantity of cocaine with intent to distribute.  PSI ¶¶ 15-16.  The adjusted offense level was reduced by three points for acceptance of responsibility.  PSI ¶¶ 22-23.  Had Petitioner been convicted of the charge in Count Two dismissed as part of the Plea Agreement, the statutory penalty would have required a mandatory consecutive term of at least five years in prison.  PSI ¶ 60.  Neither Petitioner nor the Government filed any objections to the PSI.  PSI Add.

On June 8, 2017, Judge Hall imposed a sentence of imprisonment of eighty-four months, three years supervised release, a $1,500 fine, and a $100 special assessment.  CR 116-054, doc. no. 25.  Counts One and Two were dismissed, and judgment was entered on June 9, 2017.  Id., doc. no. 26.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

**D.     § 2255 Proceedings**

Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence arguing he is entitled to have his felon in possession conviction vacated in light of the decision of the United States Supreme Court in Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019).  (See generally doc. no. 1.)

## II.   DISCUSSION

In <u>Rehaif</u>, the Supreme Court held that in a felon in possession prosecution "under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.   Prior to this 2019 decision, the government was not required "to satisfy a mens rea requirement with respect to the status element of § 922."   <u>United States v. Rehaif</u>, 888 F.3d 1138, 1144 (11th Cir. 2018), *rev'd and remanded*, 139 S. Ct. 2191.   The Eleventh Circuit Court of Appeals has determined the Supreme Court's <u>Rehaif</u> decision clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2) but did not announce a new rule of constitutional law.   <u>In re Palacios</u>, 931 F.3d 1314, 1315 (11th Cir. 2019).   The Eleventh Circuit also recognized the Supreme Court did not make the case retroactively applicable to cases on collateral appeal.   <u>Id.</u>

Petitioner argues "[a]ccording to the Supreme Court's decision in <u>Rehaif</u>, [his] guilty plea was not knowing, intelligent, and voluntary," because he was not informed of an essential element of the offense of conviction.   (Doc. no. 1, p. 4.)   Respondent argues the § 2255 motion should be denied for four reasons:   (1) the claim is barred by the collateral attack waiver; (2) the non-jurisdictional defect of failing to include the mens rea element in the indictment was waived by entry of a knowing and voluntary guilty plea; (3) the claim is procedurally defaulted; and (4) any error was harmless.

### A.   Petitioner's Claim Is Barred by the Valid Collateral Attack Waiver in the Plea Agreement

It is well settled that waiver of the right to attack a sentence and conviction on direct

appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (per curiam).  Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (per curiam).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement, signed and verified by Petitioner explicitly set forth he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same, on any ground other than ineffective assistance of counsel.  Plea Agreement, p. 7.  None of the exceptions to the waiver apply because Petitioner's sentence did not exceed the statutory maximum or the advisory Guidelines range, and the government did not appeal.  Id. at 6-7.  Likewise, the Rehaif claim is not based on a claim of ineffective assistance, and therefore does not fall within the only exception to the collateral attack waiver.  Id. at 7.  Moreover, Judge Hall reviewed the appeal

and collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and had agreed to the terms described. Rule 11 Tr. 13-14.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and the Rehaif claim falls within the scope of the waiver. Therefore, enforcement of this valid collateral attack waiver bars Petitioner's Rehaif claim. See United States v. Marc, - F. App'x -, No. 19-10656, 2020 WL 1487670, at *3-4 (11th Cir. Mar. 25, 2020) (enforcing knowing and voluntary appeal waiver to bar Rehaif claim).

### B. Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary

Having determined that Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in a § 2255 motion, the Court turns to the knowing and voluntary nature of the guilty plea. For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing Bushert, 997 F.2d at 1350-51).

### 1. Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only

challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea."  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2.    Judge Hall's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Hall reviewed the charges against Petitioner in the indictment, with a particular focus on the felon in possession charge to which the guilty plea applied, as well as the forfeiture allegation against him.  Rule 11 Tr. 9, 17, 20.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  Id. at 11-12.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement.  Id. at 14, 17.  Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction, to include up ten years in prison.  Id. at 14.  Finally, Petitioner also testified he was satisfied with the help he had received from Mr. Johnson.  Id. at 10; see also Plea Agreement, p. 8 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 10 ("I have read and carefully reviewed this agreement with my attorney.").

The thorough plea colloquy ensured that Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the felon in possession charge.  Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's Rehaif claim.  Likewise, as discussed below, the valid plea also bars the non-jurisdictional

error of failure to include the mens rea element now required for conviction on a § 922(g), felon in possession charge.

C.     The <u>Rehaif</u> Claim Is a Non-Jurisdictional Error Waived by the Knowing and Voluntary Guilty Plea

Petitioner alleges the indictment containing the charge to which he pleaded guilty was inadequate because it failed to include the mens rea element of the offense, *i.e.*, he claims "[his] guilty plea was not knowing, intelligent, and voluntary," because he was not informed of an essential element of the offense of conviction.  (Doc. no. 1, p. 4.)  The record shows otherwise:  (1) the indictment listed Petitioner's prior felony convictions, (CR 116-054, doc. no. 1); (2) Petitioner admitted he was guilty of possession of a firearm by a convicted felon, (Rule 11 Tr. 20); (3) Petitioner signed the Plea Agreement recounting the prior convictions, (CR 116-054, doc. no. 23, p. 2); and (4) the PSI detailed Petitioner's prior criminal history, to which he did not object, (PSI ¶¶ 27, 29).

Even if the Court were to presume for the sake of argument Petitioner did not know his status as a convicted felon prohibited him from possessing a firearm, failure to include the mens rea element of a § 922(g), felon in possession charge, is a non-jurisdictional defect. See <u>United States v. Moore</u>, 954 F.3d 1322, 1334-35 (11th Cir. 2020); <u>United States v. McClellan</u>, - F.3d -, No. 18-13289, 2020 WL 2188875, at *6 (11th Cir. May 6, 2020).  Entry of a valid guilty plea waives all non-jurisdictional defects that occurred prior to entry of the plea, which includes omission of an element of offense such as the mens rea element of a felon in possession charge.  See <u>United States v. Ward</u>, 796 F. App'x 591, 599 (11th Cir. 2019) (*per curiam*); <u>see also</u> <u>United States v. Brown</u>, 752 F.3d 1344, 1354 (11th Cir. 2014) (holding failure to include mens rea element in indictment was non-jurisdictional defect

waived by guilty plea); <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### D. Petitioner Procedurally Defaulted His <u>Rehaif</u> Claim by Failing to Assert it on Direct Appeal

Even if Petitioner's <u>Rehaif</u> claim were not barred by the valid collateral attack waiver and guilty plea, it is procedurally defaulted. A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills</u>, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error; or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Mills</u>, 36 F.3d at 1055-56 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. <u>See</u> <u>Weeks v. Jones</u>, 52

F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170. As to the exception for actual innocence, the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013) (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24 (citation omitted).

Petitioner did not raise his mens rea claim at his change of plea hearing, at his sentencing, or on direct appeal. Petitioner points out as justification for this failure that the claim was unavailable before the Supreme Court's Rehaif decision. (Doc. no. 1, p. 9.) However, as explained above, that a claim was previously unacceptable to a court does not

satisfy the cause requirement. Id. at 623. Moreover, the building blocks for the claim were available. Bane, 948 F.3d at 1297. As the Eleventh Circuit has explained, the Supreme Court's Rehaif decision did not announce a new rule of constitutional law but instead clarified the requirements for prosecuting an individual under 18 U.S.C. §§ 922(g) and 924(a)(2). See In re Palacios, 931 F.3d at 1315.

Petitioner points to nothing that *prevented* him from raising what may have seemed at the time to be a losing argument. After all, as a sister circuit aptly explained, "[T]he difficulty in prevailing on a particular argument does not excuse the failure to make it in the first place." Prost v. Anderson, 636 F.3d 578, 592 n.11 (10th Cir. 2011) (Gorsuch, J.). Indeed, successfully challenging circuit precedent all the way to the Supreme Court is the reward to litigants who "took the trouble to challenge adverse circuit precedent." Id. at 590-91.[1] As Petitioner cannot satisfy the cause *and* prejudice standard, his procedural default is not excused. See Mills, 36 F.3d at 1055.

Nor can Petitioner satisfy the rigorous fundamental miscarriage of justice exception. He presents no evidence, much less new evidence, to suggest no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt had he gone to trial and required the government to prove the mens rea element. See McQuiggin, 569 U.S. at 386. This is particularly true in light of Petitioner's criminal history detailed in Part II(C). Prior to the offense conduct at issue here, Petitioner accrued a criminal history that included two felony convictions and two prison sentences of five years to be served concurrently. The indictment listed Petitioner's two prior felony convictions; Petitioner admitted he was guilty

---

[1] For the sake of completeness, the Court notes a collateral attack waiver cannot serve as cause to excuse procedural default. See Lester v. United States, No. 3:17-CR-76-J-32JBT, 3:18-cv-1076-J-32JBT, 2020 WL 1911462 (M.D. Fla. Apr. 20, 2020).

of being a convicted felon when he possessed a firearm in May 2016; Petitioner signed the Plea Agreement recounting the prior convictions; and the PSI detailed Petitioner's prior criminal history, to which he did not object.  "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.  United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

Petitioner never objected or otherwise expressed any surprise or confusion over his status as a felon.  "Where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status, a Rehaif error does not affect his substantial rights."  McClellan, 2020 WL 218875, at *6 (citing United States v. Reed, 941 F.3d 1018, 1022 (11th Cir. 2019)); see also Ward, 796 F. App'x at 600-01 (finding prior criminal history can show defendant's knowledge of status as belonging to group prohibited from possessing a firearm).  Stated otherwise, a bare Rehaif claim, made in the face of an established criminal history showing a petitioner belongs to the group prohibited from possessing a firearm, does not support an actual innocence claim.  See In re Wright, 942 F.3d 1063, 1065 (11th Cir. 2019); Reed, 941 F.3d at 1021-22.

In addition, because Petitioner pleaded guilty to the felon in possession charge in exchange for the government dismissing the remaining counts, including the trafficking while possessing a firearm charge in Count Two with a maximum penalty of five years in prison, Petitioner must also show actual innocence as to the dismissed charges.  See Bousley, 523 U.S. at 624.  As explained in detail in the PSI, and as explained by SA Rhodes at the change of plea proceedings, Richmond County narcotic investigators executed a search warrant of a residence located at 1302 Wallace Street because of complaints of drug activity.  Rule 11 Tr. 18-19.  Petitioner and two other individuals were present at the time of the

search.  Id. at 19.  Investigators located 520 grams of marijuana and a Ruger, Model LCP

.380 caliber, pistol in the residence.  Id.  Petitioner was mirandized and confessed to

possession of the firearms and narcotics.  Id.  During his investigation, SA Rhodes

determined the firearm in Petitioner's possession at the time of his arrest was reported stolen

to the Richmond County Sheriff's Office on December 18, 2012.  Id.  Petitioner did not

object to the information in the PSI or offered by SA Rhodes.  Nor does he now offer any

evidence regarding actual innocence of the dismissed charges.

In sum, Petitioner procedurally defaulted his Rehaif claim.  See United States v.

Sanders, No. 4:14CR81-RH-CAS, 2020 WL 1876335, at *2 (N.D. Fla. Apr. 15, 2020)

(rejecting § 2255 Rehaif claim as procedurally defaulted when not raised at trial or on direct

appeal and petitioner failed to satisfy cause and prejudice or actual innocence exception).

### E.     Petitioner Is Not Entitled to Relief on the Merits Because Omission of the Mens Rea Element Was Harmless Error

Even if Petitioner's Rehaif claim were not barred by the valid collateral attack waiver,

barred by entry of a valid guilty plea, and procedurally defaulted, he is not entitled to relief

because the Rehaif error was harmless.  It is long-settled that to obtain collateral relief,

Petitioner must identify "a fundamental defect which inherently results in a complete

miscarriage of justice, [or is] an omission inconsistent with the rudimentary demands of fair

procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).  On collateral review, relief

cannot be granted unless there is "grave doubt" that the error "had substantial and injurious

effect or influence" on the outcome of the underlying proceedings.  Al-Amin v. Warden

Georgia Dep't of Corr., 932 F.3d 1291, 1298 (11th Cir. 2019) (citations omitted), cert.

denied sub nom. Al-Amin v. Ward, No. 19-573, 2020 WL 1668291 (U.S. Apr. 6, 2020).  The

Eleventh Circuit has explained that when applying the appropriate harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), "[i]f, when all is said and done, the [court's] conviction is sure that the error did not influence, or had but very slight effect, the verdict and the judgment should stand." Ross v. United States, 289 F.3d 677, 683 (11th Cir. 2002) (citations omitted).

Petitioner cannot shoulder his heavy burden because the uncontroverted record establishes Petitioner knew he was a felon when he possessed the firearms forming the basis of his § 922(g) conviction on Count Three. As discussed in Part II(C) & (D), *supra*, Petitioner had twice been convicted of felonies resulting in prison sentences of five years, to be served concurrently. PSI ¶¶ 27, 29. Petitioner did not object to any of the information in the PSI, nor did he object at any time when he signed the Plea Agreement listing his prior felonies, or SA Rhodes' testimony about Petitioner's prior criminal history. Petitioner also admitted he was guilty of being a convicted felon when he possessed a firearm in May 2016. Rule 11 Tr. 20.

That Petitioner had two prior felony convictions and sentences imposed that required him to serve more than one year in prison shows he knew his status as a felon prior to his federal offense date. See Reed, 941 F.3d at 1022 (citing eight prior felonies, stipulation to felony conviction prior to offense date, and trial testimony to show knowledge of status as felon); United States v. Caldwell, - F. App'x -, No. 18-15987, 2020 WL 914922, at *4 (11th Cir. Feb. 26, 2020) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant responded affirmatively to district court questions if he knew what a felony was and if he had previously pled guilty to a felony); United States v. Green, 798 F. App'x 527, 533 (11th Cir. 2020) (*per curiam*) (finding no plain error affecting substantial

rights on direct appeal after concluding prior conviction of multiple felonies and serving three-year prison sentence shows knowledge of status as a felon); United States v. Gilcrest, 792 F. App'x 734, 736 (11th Cir. 2019) (*per curiam*) (finding no plain error affecting substantial rights on direct appeal where defendant had served more than one year in prison multiple times, had a prior felon-in-possession conviction, did not object to portions of PSI recounting prior felony history, and stipulated at trial to being felon at time of offense).

In sum, pursuant to a harmless error analysis, Petitioner has not shown the Rehaif error was "a fundamental defect which inherently result[ed] in a complete miscarriage of justice," and he is not entitled to relief. See Brecht, 507 U.S. at 634 & n.8.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 8th day of June, 2020, at Augusta, Georgia.

_____

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA